William B. Pollard, III (WBP-9542)
Emily Rosdeitcher (ER-3546)
KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
(212) 418-8600
Attorneys for Plaintiff

09 CV 10153

JUDGE BATTS

RECEIVED
DEC 14 2009
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

FEDERAL INSURANCE COMPANY,                    :

                              Plaintiff,      :        09 CV _____

              - against -                     :

ZURICH AMERICAN INSURANCE COMPANY, :          COMPLAINT

                              Defendant.      :        JURY TRIAL DEMANDED

------------------------------------------------------------X        ECF CASE

  Plaintiff Federal Insurance Company ("Federal"), by its attorneys, Kornstein Veisz Wexler

& Pollard, LLP, for its complaint, alleges, with knowledge as to its own acts, and otherwise on

information and belief, as follows:

### The Nature of This Action

  1. This is an action to recover money damages from defendant Zurich American

Insurance Company ("Zurich").

  2. Federal and Zurich were co-sureties on an excess insurance policy that they issued

to The Hartford Financial Services Group, Inc. ("The Hartford"). Under the terms of the co-

surety agreement, Federal was liable for sixty percent (60%) of any covered loss that The

Hartford incurred, and Zurich was liable for the remaining forty percent (40%) of covered loss.

The co-surety agreement also vested in Federal complete control over the investigation and

adjustment of any claim that The Hartford made under the policy, and made Zurich liable for forty percent (40%) of allocated loss expense incurred by Federal that was associated with any claim made by The Hartford.

3.    The Hartford made a Claim under the excess policy, and, as of the date of the Complaint, Federal has incurred approximately $4,517,000 in allocated loss expense associated with that Claim.  Federal asked Zurich to pay its forty percent (40%) proportionate share of those expenses.  Zurich, however, refused, claiming that it has no responsibility for any allocated loss expense associated with The Hartford's Claim.  This action seeks to recover what Zurich has wrongfully refused to pay Federal and to require Zurich to pay its share of any additional allocated loss expense that Federal incurs.

Jurisdiction and Venue

4.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), based on diversity of citizenship.

5.    The amount in controversy, exclusive of interest and costs, exceeds $75,000.

6.    The action arises under the common law of New York.

7.    Venue in this District is proper under 28 U.S.C. § 1391.

The Parties

8.    Plaintiff Federal is an insurance company incorporated under the laws of the State of Indiana, with its principal place of business at 15 Mountain View Road, Warren, New Jersey 07059.  Federal is licensed to do business and does business in the State of New York, maintains an office at 55 Water Street, New York, New York 10041, and is present in the State of New York.

9.     Defendant Zurich is an insurance company incorporated under the laws of the State of Illinois, with its principal place of business at 1400 American Lane, Schaumburg, IL 60196. Zurich is licensed to do business and does business in the State of New York, maintains an office at 105 East 17th Street, New York, New York 10003, and is present in the State of New York.

10.     A substantial number of acts out of which the claims for relief in this action arise, including claim adjustment and Zurich's refusal to pay what it owes Federal, took place within the Southern District of New York.

## STATEMENT OF FACTS

### The Federal Policy

11.     On or about October 26, 2001, The Hartford obtained a claims made and reported Professional Liability insurance policy from XL Insurance Limited ("XL") covering the period from April 15, 2001 through April 15, 2004.   The XL policy was a primary policy that provided coverage limits up to $25 million above a $10 million self-insured retention.

12.     Federal issued a first layer excess Professional Liability insurance policy, number 70228870, to The Hartford (the "Federal Policy"), a copy of which is annexed hereto as Exhibit A. The Federal Policy provided coverage limits of $25 million above the primary limits of the XL policy. The Federal Policy, in general, followed the form of the underlying XL policy, and, thus, in general, incorporated its terms.

13.     Pursuant to Endorsement No. 3, Zurich is a co-surety on the Federal Policy.  The Endorsement is entitled "Co-Surety Endorsement - Claims Cooperation," and reads, in part, as follows with the words in bold being defined terms:

3

It is agreed that:

. . . . .

**Controlling Company** means Federal Insurance Company.

**Company** means each insurance company shown in the schedule below. Each **Company** shall be liable only for its specific percentage of any loss corresponding to such **Company** in the Schedule below:

## SCHEDULE

| Insurance Company | Percentage Underwritten |
|---|---|
| Federal Insurance Company | 60% |
| Zurich-American Insurance Company | 40% |

****** ****** ****** ****** ******

Claims Control

15.  The execution by the **Controlling Company** of the Declarations, and all Endorsements shall constitute execution by all **Companies** signing this Endorsement. Any amendments or alterations agreed to by the **Controlling Companies** during the **Policy Period** shall be binding upon the **Companies**.

The **Controlling Company** shall investigate, adjust and settle all claims arising under this policy on behalf of all **Companies**. However, the **Controlling Company** shall not settle any claim which is considered binding on behalf of each **Company** individually for their proportion of any loss, without the prior written consent of each **Company**, which consent shall not be unreasonably withheld. The **Companies** shall be entitled to any and all particulars of any such claim and the **Controlling Company** shall provide each **Company** with prompt notice of any significant changes in the status or development of any claim, including reserve changes and settlement negotiations.

In no event shall the **Controlling Company** be liable for more than its proportionate share of loss as stated in this Endorsement.

4

> The **Companies** shall be liable for their proportionate share of
> allocated loss expense incurred by the **Controlling Company**
> associated with any claim made under the policy.

14.     Above the Federal Policy were three additional layers of excess insurance.  Zurich

was the lead insurer on the third excess layer, which provided $50 million in coverage limits above

$100 million coverage limits provided by the primary and first two excess coverage layers.

Zurich's policy for that third excess layer includes a co-surety agreement that contains language

that is identical in all substantive respects to the language in the co-surety agreement

(Endorsement No. 3) in the Federal Policy.

<u>The Hartford Claim</u>

15.     In October 2001, an action was commenced against The Hartford in federal district

court in Oregon alleging that The Hartford wilfully violated provisions of the Fair Credit

Reporting Act by failing to notify plaintiffs that The Hartford had considered information in

plaintiffs' credit reports when setting their premiums.  Plaintiffs sought class certification,

statutory damages, punitive damages and attorneys' fees and costs.  (This lawsuit is hereinafter

referred to as "the *Reynolds* action.")

16.     At The Hartford's request, its insurance broker, Marsh & McLennan Companies

("Marsh"), on or about July 9, 2002, provided notice of the *Reynolds* action to The Hartford's

insurers.

17.     In July 2003, The Hartford won dismissal of plaintiffs' claims at the district court

level, and subsequently informed its insurers that it did not believe that any incurred loss,

including defense expenses, would exceed its self-insured retention.  The Court of Appeals for the

Ninth Circuit, however, reversed the district court, ruling that The Hartford's actions had violated

the Fair Credit Reporting Act, and, in January 2006, remanded the case to the district court for

further proceedings, including to determine whether the violations were wilful. If the violations

had been wilful, that would have exposed The Hartford to substantial damages.

18.    On July 24, 2006, The Hartford wrote Marsh saying that it intended to participate,

later that month, in a mediation with the plaintiffs for the purpose of trying to settle the *Reynolds*

action. Marsh, in turn, on July 26, 2006, forwarded The Hartford's correspondence to The

Hartford's insurers -- after the mediation had already taken place and a settlement in principle had

been reached, on July 25, 2006.

19.    On September 8, 2006, The Hartford executed a Stipulation of Settlement, which

was preliminarily approved by the district court three days later. A fairness hearing was scheduled

for February 26, 2007.

20.    By letter dated September 19, 2006, The Hartford informed its insurers that it had

settled the *Reynolds* action. Federal was not asked to give its consent to this settlement, nor did it

give any such consent.

21.    On January 22, 2007, XL issued a reservation of rights letter with respect to The

Hartford's Claim involving the *Reynolds* action and the related settlement.

22.    On February 5, 2007, following its review of the pleadings and decisions in the

*Reynolds* action, Federal denied coverage for the *Reynolds* action and settlement. After further

discussion with The Hartford, Federal reaffirmed its coverage denial on April 5, 2007.

23.    Zurich was aware of Federal's declination of coverage for The Hartford's Claim,

and agreed with that declination of coverage. At no time did Zurich request that Federal provide

6

coverage for The Hartford's Claim, or that Federal seek to negotiate a settlement with The Hartford of its Claim.

The Arbitration

24.     In July 2007, Federal commenced an arbitration against The Hartford seeking a declaratory judgment that there was no coverage under the Federal Policy, to which Zurich is a co-surety, with respect to the *Reynolds* action or its settlement. The arbitration took place between January 26 and January 30, 2009.

25.     Not only was Zurich aware of the arbitration; its representatives attended it. Zurich participated extensively in the prosecution of Federal's contention that there was no coverage for The Hartford's Claim under the Federal Policy. Before and during the arbitration, Federal regularly consulted Zurich concerning legal issues, discovery, trial strategy and expert testimony, among other things. Zurich also recommended the expert who Federal called to testify in support of its case. As a co-surety on the Federal Policy, Zurich would have directly and equally benefitted from any ruling by the Arbitration Panel that there was no coverage under the policy for The Hartford's Claim.

26.     The Arbitration Panel issued a final partial award on April 3, 2009, finding in favor of The Hartford. In addition to the finding of coverage, Federal was ordered to pay The Hartford's Claim, plus interest, within 30 days of notification by The Hartford that XL had paid the balance of its coverage limits under the primary layer.

27.     Following that decision, Federal and Zurich both paid their proportionate share of the Federal Policy limits to The Hartford for the loss that it had incurred because of the *Reynolds* action.

28.    After further submissions, on October 23, 2009, the Arbitration Panel directed that The Hartford be paid $3.5 million to reimburse it for the attorneys' fees and other costs that it had incurred in the arbitration. Federal paid the award to The Hartford in the stated amount on or about December 11, 2009.

29.    On November 17, 2009, Federal demanded that Zurich pay forty percent (40%) of the attorneys' fees and costs awarded The Hartford by the Arbitration Panel. Zurich rejected Federal's demand.

30.    Prior to commencing the arbitration, Federal incurred $6,611.15 in allocated loss expense that was associated with The Hartford's Claim. This expense was primarily for coverage advice relating to The Hartford's challenge of Federal's declination of coverage. Federal also has incurred approximately $1,010,000 in allocated loss expense that was associated with the arbitration of coverage for The Hartford's Claim, and expects to incur additional allocated loss expense in a modest amount.

Zurich Refuses to Pay Its Pro Rata Share of Allocated Loss Expense

31.    Federal has now incurred approximately $4,517,000 in allocated loss expenses that are associated with The Hartford's Claim. Zurich is obligated under the terms of the Federal Policy to pay forty percent (40%) of that amount ($4,517,000), as well as its share of all additional allocated loss expenses that Federal incurs. Federal has asked Zurich to pay its *pro rata* share of these expenses. Zurich has refused to make any such payment. Zurich also contends that it is not responsible for any of the allocated loss expense that Federal incurred, notwithstanding the express terms of Endorsement No. 3 to the contrary.

8

FIRST CLAIM
(Breach of Contract -- Damages)

32.    Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 31 of this complaint as if fully set forth herein.

33.    Federal has fully performed its obligations under the Federal Policy.

34.    Zurich's refusal to pay its *pro rata* share of the allocated loss expenses for The Hartford's Claim is a breach of Zurich's obligations under the Federal Policy.

35.    As a result of Zurich's breach of the Federal Policy, Federal has sustained damages in an amount to be determined at trial, but, in any event, not less than $1,806,800.

SECOND CLAIM
(Unjust Enrichment)

36.    Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 31 of this complaint as if fully set forth herein.

37.    Zurich obtained the benefit of Federal as the **Controlling Company** having performed all of the work and incurred and paid all the expenses in the investigation and adjustment of The Hartford's Claim, including the expenses associated with the arbitration of whether The Hartford's Claim was a covered Claim under the Federal Policy.

38.    Equity requires Zurich to pay Federal forty percent (40%) of the expenses associated with The Hartford's Claim that Federal incurred and paid for the benefit of its co-surety Zurich.

39.    As a result of Zurich's unjust enrichment, Federal has sustained damages in an amount to be determined at trial, but, in any event, not less than $1,806,800.

9

### THIRD CAUSE OF ACTION
(Equitable Indemnification)

40.    Federal repeats and re-alleges each and every allegation contained in paragraphs 1 to 31 as if fully set forth herein.

41.    Federal paid Zurich's *pro rata* share of the Arbitral award of attorneys' fees and costs after Zurich refused to pay what it owed The Hartford.  As such, Federal has paid $1,806,800 to satisfy an obligation that Zurich owed The Hartford.

42.    Federal is thus entitled to indemnification from Zurich in the amount of $1,806,800 as a result of Federal's payment to The Hartford of money that Zurich was obligated to pay.

WHEREFORE, plaintiff demands judgment:

a.  On the first claim, awarding plaintiff damages in an amount to be determined at trial, but not less than $1,806,800;

b.  On the second claim, awarding plaintiff an amount to be determined at trial, but not less than $1,806,800;

c.  On the third claim, awarding plaintiff an amount to be determined at trial, but not less than $1,806,800; and

d. Granting such other and further relief as to the Court may seem just and proper, including interest, plaintiff's costs and reasonable attorneys' fees.

Dated: New York, New York
     December 14, 2009

KORNSTEIN VEISZ WEXLER & POLLARD, LLP

By: _____
     William B. Pollard, III (WBP-9542)
     Emily Rosdeitcher (ER-3546)
     757 Third Avenue
     New York, New York 10017
     (212) 418-8600

     Attorneys for Plaintiff Federal Insurance Company

11

**Exhibit A**



**Chubb Group of Insurance Companies**

15 Mountain View Road, Warren, New Jersey 07059

**DECLARATIONS**
**EXCESS INSURANCE POLICY**

**ITEM 1.   Parent Organization:**

THE HARTFORD FINANCIAL SERVICES GROUP, INC.

Policy Number: 70228870

**FEDERAL INSURANCE COMPANY**
Incorporated under the laws of Indiana,
a stock insurance company, herein called the Company

**ITEM 2.   Principal Address:**

Hartford Plaza, 690 Asylum Avenue
Hartford, CT 06115

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN 46204-1927

**ITEM 3.   Limit of Liability:**

**Each Policy Period**          $    25,000,000.

**ITEM 4.   Underlying Insurance:**

    **(A)   Primary Policy**

        Insurer:                    XL Insurance Ltd
        Policy Number:         XLE+O-01219-01
        Limits:                      $25,000,000.
        Policy Period:            April 15, 2001 to April 15, 2004

    **(B)   Other Policies**

        Insurer:                    None.
        Policy Number:
        Limits:
        Policy Period:

**ITEM 5.   Policy Period:**      from:     12:01 a.m. on April 15, 2001
                           to:         12:01 a.m. on April 15, 2004

**ITEM 6.   Endorsements Effective at Inception:  1 - 3**

**ITEM 7.   Termination of Prior Policies:**          None

**ITEM 8.   Pending or Prior Date:**          April 15, 1997

The Company issuing this policy has caused this policy to be signed by its authorized officers, but it shall not be
valid unless also signed by a duly authorized representative of the Company.

_Henry A Aulick_

Secretary

_[signature]_

President

February 14, 2002
Date

_Robert Hamburger_

Authorized Representative



**CHUBB**

In consideration of the payment of the premium and subject to the Declarations, limitations, conditions, provisions and other terms of this policy, the Company agrees as follows:

| | | |
|---|---|---|
| ***Insuring Clause*** | 1. | The Company shall provide the **Insureds** with insurance during the **Policy Period** excess of the **Underlying Limit**. Coverage hereunder shall attach only after the insurers of the **Underlying Insurance** shall have paid in legal currency the full amount of the **Underlying Limit** for such **Policy Period**. Coverage hereunder shall then apply in conformance with the terms and conditions of the **Primary Policy** as amended by any more restrictive terms and conditions of any other policy designated in ITEM 4.(B) of the Declarations, except as otherwise provided herein. |
| ***Maintenance of Underlying Insurance*** | 2. | All **Underlying Insurance** shall be maintained in full effect during the **Policy Period** and shall afford the same coverage provided by all **Underlying Insurance** in effect upon inception of this **Policy Period**, except for any depletion or exhaustion of the **Underlying Limit** solely by reason of payment of losses thereunder. |
| ***Depletion of Underlying Limit*** | 3. | Only in the event of exhaustion of the **Underlying Limit** by reason of the **Underlying Insurance**, or the **Insureds** in the event of financial impairment for insolvency of an insurer of the **Underlying Insurance**, paying in legal currency loss which, except for the amount thereof, would have been covered hereunder, this policy shall continue in force as primary insurance, subject to its terms and conditions and any retention applicable to the **Primary Policy**, which retention shall be applied to any subsequent loss in the same manner as specified in the **Primary Policy**. |
| | | The risk of uncollectability of any **Underlying Insurance**, whether because of financial impairment or insolvency of an underlying insurer or any other reason, is expressly retained by the **Insureds** and is not in any way insured or assumed by the Company. |
| ***Underlying Sublimits*** | 4. | If any **Underlying Limit** is subject to a **Sublimit**: |
| | a. | coverage hereunder shall not apply to any claim which is subject to such **Sublimit**, however, |
| | b. | the **Underlying Limit** shall be recognized hereunder as depleted to the extent of any payment of such claim subject of such **Sublimit**. |
| ***Limit of Liability*** | 5. | The Company's maximum liability for loss shall be the amount set forth in ITEM 3. of the Declarations. |
| ***Claim Participation*** | 6. | The Company may, at its sole discretion, elect to participate in the investigation, settlement or defense of any claim covered by this policy even if the **Underlying Insurance** has not been exhausted. |



| | | |
|---|---|---|
| **Pending or Prior Matters** | 7. | The Company shall not be liable under this policy for any loss which is based upon, arises from or is in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any **Insured** on or prior to the Pending or Prior Date set forth in ITEM 8. of the Declarations, or the same or any substantially similar fact, circumstance or situation underlying or alleged therein. |
| **Subrogation - Recoveries** | 8. | In the event of any payment under this policy, the Company shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery and the **Insureds** shall execute all papers required and shall do everything necessary to and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit in the name of the **Insured.** |
| | | Any amounts recovered after payment of loss hereunder shall be apportioned in the inverse order of payment to the extent of actual payment. The expenses of all recovery proceedings shall be apportioned among the recipients of the recovery in the ratio of their respective recoveries. |
| **Notice** | 9. | The **Insureds** shall, as a condition precedent to exercising their rights under this policy, give to the Company written notice as soon as practicable of the cancellation of any **Underlying Insurance,** any notice given under any **Underlying Insurance** and additional or return premiums charged or paid in connection with any **Underlying Insurance.** |
| | | Notice to the Company under this policy shall be given in writing addressed to: |

Notice of claim:

Home Office Claims Department
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

All other notices:

Executive Protection Practice
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

Such notice shall be effective on the date of receipt by the Company at such address.

| | | |
|---|---|---|
| **Company Authorization Clause** | 10. | By acceptance of this policy, the **Parent Organization** named in ITEM 1. of the Declarations agrees to act on behalf of all the **Insureds** with respect to the giving and receiving of notice of claim or termination, the payment of premiums and the receiving of any return premiums that may become due under this policy, the negotiation, agreement to and acceptance of endorsements, and the giving or receiving of any notice provided for under this policy (except the giving of notice to apply for any extended reporting period), and the **Insureds** agree that the **Parent Organization** shall act on their behalf. |
| **Alteration** | 11. | No change in, modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized employee of the Company. |



**CHUBB**

| | | |
|---|---|---|
| ***Policy Termination*** | 12. | This policy shall terminate at the earliest of the following times: |

    a.    sixty days after the receipt by the **Parent Organization** of a written notice of termination from the Company;

    b.    upon the receipt by the Company of written notice of termination from the **Parent Organization**;

    c.    upon expiration of the **Policy Period**;

    d.    thirty days after the effective date of any alteration or termination of any **Underlying Insurance**, whether by the **insureds** or any insurer of the **Underlying Insurer**, unless the Company (i) receives written notice of such alteration or termination from the **Parent Organization**, (ii) receives such information as the Company reasonably requests, and (iii) agrees, pursuant to an endorsement, not to terminate this policy; or

    e.    at such other time as may be agreed upon by the Company and the **Parent Organization**.

Notice of cancellation or non-renewal of the **Primary Policy** duly given by the primary insurer shall serve as notice of the cancellation or non-renewal of this policy by the Company.

The Company shall refund the unearned premium computed at customary short rates if the policy is terminated by the **Parent Organization**. Under any other circumstances the refund shall be computed pro rata.

| | | |
|---|---|---|
| ***Termination of Prior Policies*** | 13. | Any policies specified in ITEM 7 of the Declarations shall terminate, if not already terminated, as of the inception date of this policy. |

| | | |
|---|---|---|
| ***Policy Definitions*** | 14. | When used in this policy: |

**Insureds** means those persons or organizations insured under the **Primary Policy**.

**Parent Organization** means the organization designated in ITEM 1. of the Declarations.

**Primary Policy** means the policy scheduled in ITEM 4.(A) of the Declarations or any policy of the same insurer replacing or renewing such policy.

**Policy Period** means the period of time specified in ITEM 5. of the Declarations, subject to prior termination in accordance with Section 12 above. If any extended reporting period is exercised, such extension shall be treated as set forth in the **Primary Policy**.

**Sublimit** means any **Underlying Insurance** limit of liability which:

    a.    applies only to a particular grant of coverage under such **Underlying Insurance**, and

*Policy Definitions*
*(continued)*

b.  reduces and is part of the otherwise applicable limits of liability of such **Underlying Insurance** set forth in ITEM 4. of the Declarations.

**Underlying Insurance** means all policies scheduled in ITEM 4. of the Declarations and any policies of the same insurers replacing or renewing them.

**Underlying Limit** means the amount equal to the aggregate of all limits of liability as set forth in ITEM 4. of the Declarations for all **Underlying Insurance**, subject to any **Sublimits**, plus the applicable uninsured retention, if any, under the **Primary Policy**.



**CHUBB**

Effective date of
this Endorsement: April 15, 2001

**FEDERAL INSURANCE COMPANY**

Endorsement No:   1

To be attached to and form part of
Policy Number:      70228870

Issued to: THE HARTFORD FINANCIAL SERVICES GROUP, INC.

---

### AMENDED NOTICE ENDORSEMENT

It is agreed that Section 9, **Notice** of this policy, is amended by deleting the second paragraph in its entirety and replacing it with the following:

Notices required to be given to the Company under this policy shall be given in writing addressed to:

<u>Notice of Claims:</u>

Home Office Claims Department
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

<u>All Other Notices:</u>

Department of Financial Institutions
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: February 14, 2002

By _____
            Authorized Representative

Excess Policy
Form 17-02-2373 (Ed. 5-01)


**CHUBB**

Effective date of
this Endorsement: April 15, 2001

FEDERAL INSURANCE COMPANY

Endorsement No:   2

To be attached to and form part of
Policy Number:      70228870

Issued to:  THE HARTFORD FINANCIAL SERVICES GROUP, INC.

### AMENDED POLICY TERMINATION

It is agreed that Section 12., **Policy Termination** is deleted in its entirety and replaced with the following:

**Policy Termination**

12.     This policy shall terminate at the earliest of the following times:

a.     upon expiration of the **Policy Period;**

b.     . thirty days after the effective date of any alteration or termination of any **Underlying Insurance,** whether by the **Insureds** or any insurer of the **Underlying Insurance,** unless the Company (i) receives written notice of such alteration or termination from the **Parent Organization,** (ii) receives such information as the Company reasonably requests, and (iii) agrees, pursuant to an endorsement, not to terminate this policy; or

c.     at such other time as may be agreed upon by the Company and the **Parent Organization.**

Notice of cancellation or non-renewal of the **Primary Policy** duly given by the primary insurer shall serve as notice of the cancellation or non-renewal of this policy by the Company.

The Company shall refund the unearned premium computed at customary short rates if the policy is terminated by the **Parent Organization.** Under any other circumstances the refund shall be computed pro-rata.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: February 14, 2002                    By _Robert Hamburger_____

Authorized Representative




**CHUBB**

---

Effective date of
this Endorsement: April 15, 2001

**FEDERAL INSURANCE COMPANY**

Endorsement No: 3

To be attached to and form part of
Policy Number:    70228870

Issued to: THE HARTFORD FINANCIAL SERVICES GROUP, INC.

---

### CO-SURETY ENDORSEMENT – CLAIMS COOPERATION

It is agreed that:

1.    Section 14., Definitions, is amended by adding the following:

**Controlling Company** means Federal Insurance Company

**Company** means each insurance company shown in the schedule below. Each **Company** shall be liable only for its specific percentage of any loss corresponding to such **Company** in the Schedule below:

#### SCHEDULE

| Insurance Company | Percentage Underwritten |
|---|---|
| Federal Insurance Company | 60% |
| Zurich-American Insurance Company | 40% |

2.    Section 5., Limit of Liability, is deleted in its entirety and replaced with the following:

Each **Company's** maximum liability for each loss, shall be the percentage as set forth above as such **Company's** Limit of Liability for each loss set forth in 1. above.

Each **Company's** maximum liability for loss, shall be for such proportion as such **Company's** Limit of Liability set forth in Item 3. of the Declarations.

3.    Section 9., Notice, is amended by adding the following:

In the absence of a request from any **Company** that notice of claim shall be given to or filed directly with it, the **Insured** giving such notice to and the filing of such proof with the **Controlling Company** shall be deemed to be in compliance with the conditions of this policy for the giving of notice of claim, if given and filed in accordance with said conditions.

4.    The following Section is added:

**Claims Control**

15.    The execution by the **Controlling Company** of the Declarations, and all Endorsements shall constitute execution by all **Companies** signing this Endorsement. Any amendments or alterations agreed to by the **Controlling Companies** during the **Policy Period** shall be binding upon the **Companies**.

 

The **Controlling Company** shall investigate, adjust and settle all claims arising under this policy on behalf of all **Companies**. However, the **Controlling Company** shall not settle any claim which is considered binding on behalf of each **Company** individually for their proportion of any loss, without the prior written consent of each **Company**, which consent shall not be unreasonably withheld. The **Companies** shall be entitled to any and all particulars of any such claim and the **Controlling Company** shall provide each **Company** with prompt notice of any significant changes in the status or development of any claim, including reserve changes and settlement negotiations.

In no event shall the **Controlling Company** be liable for more than its proportionate share of loss as stated in this Endorsement.

The **Companies** shall be liable for their proportionate share of allocated loss expense incurred by the **Controlling Company** associated with any claim made under the policy.

Underwritten for a LIMIT OF LIABILITY
OF $15,000,000.

**Controlling Company**
CHUBB & SON
A division of Federal Insurance Company
Manager

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: February 14, 2002

By _____
Authorized Representative

Underwritten for a LIMIT OF LIABILITY
OF $10,000,000.

By _____
Attorney-in-Fact
Zurich-American Insurance Company

Page 2 of 2

 **CHUBB**

**ENDORSEMENT**

Effective date of
this endorsement: April 15, 2004

Company:  Federal Insurance Company

Endorsement No. 4

**To be attached to and
form a part of Policy No. 7022-8870**

Issued to:  THE HARTFORD FINANCIAL SERVICES GROUP, INC.

**RUN-OFF ENDORSEMENT**

In consideration of the premium charged, it is agreed that:

(1)     Item 5 of the Declarations is amended to read as follows:

        ITEM 5. Policy Period:

                From 12:01 a.m. on April 15, 2001

                To 12:01 a.m. on April 15, 2010

(2)     No coverage will be available under this Policy for loss in connection with any claim made against
        any of the **Insureds** based on, arising out of, directly or indirectly resulting from, in consequence
        of, or in any way involving any actual or alleged act, error, misstatement, misleading statement,
        omission or breach of duty by an **Insured** occurring or alleged to have occurred on or after April
        15, 2004.

(3)     Effective April 15, 2004:

        (a)     Section 12 Policy Termination shall be deleted in its entirety;

        (b)     The Policy shall be deemed non-cancelable by the **Insured**; and

        (c)     The entire premium for this Policy shall be deemed fully earned.

(4)     The Company's limit of liability for all claims under this Policy, regardless of whether such claims
        are made prior to, on or after April 15, 2004, shall be the amount set forth in Item 3 of the
        Declarations.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and
conditions of coverage.

14-02-7295 (11/2003)rev.            Page 1



All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative



Effective date of
this endorsement:  April 15, 2004

**Federal Insurance Company**

Endorsement No.:  5

To be attached to and form a part of Policy
Number:            7022-8870

Issued to:  THE HARTFORD FINANCIAL SERVICES GROUP, INC.

### EXCLUSION FOR ALL MATTERS NOTICED UNDER 2004 POLICY (OR A SUCCESSOR POLICY) AND FOR ALL RELATED MATTERS

It is agreed that:

1.    As used in this endorsement, a "**2004 Policy**" means either of the Excess Insurance Policies, Policy Number 68007478 or Policy Number 68007495; issued by the Company to the **Parent Organization** for the period April 15, 2004 through April 15, 2005.

2.    As used in this endorsement, a "**Successor Policy**" means any primary or excess Insurance Company Professional Liability (or equivalent) insurance policy purchased by the **Parent Organization** or any **Subsidiary** that incepts after April 15, 2004.

3.    The Company shall not be liable for **Loss** on account of any claim based upon, arising from, or in consequence of any fact, circumstance, situation, transaction, event or wrongful act:

    a.    that is, or has at any time been, the subject of any notice given under a **2004 Policy** or under any **Successor Policy**; or

    b.    that is related to any fact, circumstance, situation, transaction, event or wrongful act that is, or has at any time been, the subject of any notice given under a **2004 Policy** or under any **Successor Policy**,

    irrespective of whether the notice given under the **2004 Policy** or under such **Successor Policy** was in reference to an existing claim or was merely in reference to "circumstances" that could or might give rise to such a claim.

4.    Notwithstanding paragraph 3 above, if the **Parent Organization** gives notice of a claim under a **2004 Policy** and the Company determines that no loss arising from that claim is covered under the **2004 Policy**, the **Parent Organization** may thereupon withdraw such notice from further consideration by the Company under the **2004 Policy** and elect, instead, to seek coverage under this Policy with respect to the matter previously noticed under the **2004 Policy**.  It is understood and agreed, however, that as a condition precedent to the withdrawal and re-submission of notice as described in the preceding sentence, the **Parent Organization** shall be required to waive any and all rights that it may have to challenge the Company's coverage determination under the **2004 Policy**.  In no event shall the **Parent Organization** be permitted to seek coverage in respect of any claim simultaneously under both this Policy and a **2004 Policy**, and in no event shall the Company be liable to pay loss on account of any claim under both this Policy and a **2004 Policy**.

5.    With respect to any **Successor Policy** issued by the Company, notwithstanding paragraph 3 above, if the **Parent Organization** gives notice of a claim under such **Successor Policy** and the Company determines that no loss arising from that claim is covered under such **Successor Policy**, the **Parent Organization** may thereupon withdraw such notice from further consideration by the Company

Excess Policy
QHTFDFNSRV (11/2004)REV.



**CHUBB**

under the **Successor Policy** and elect, instead, to seek coverage under this Policy with respect to the matter previously noticed under the **Successor Policy**. It is understood and agreed, however, that as a condition precedent to the withdrawal and re-submission of notice as described in the preceding sentence, the **Parent Organization** shall be required to waive any and all rights that it may have to challenge the Company's coverage determination under the **Successor Policy**. In no event shall the **Parent Organization** be permitted to seek coverage in respect of any claim simultaneously under both this Policy and any **Successor Policy**, and in no event shall the Company be liable to pay loss on account of any claim under both this Policy and any **Successor Policy**.

6.    In any claim to which paragraph 3 of this endorsement applies, any provisions of the **Underlying Insurance** that are inconsistent with paragraph 3 shall be inapplicable in determining whether coverage is available under this Policy, and coverage under this Policy shall not follow or otherwise conform to any such provision of the **Underlying Insurance**.

7.    In no event will coverage under this Policy attach before the insurers of the **Underlying Insurance** shall have paid in legal currency the full amount of the **Underlying Limit**.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: November 5, 2004                            By_____
                                                      Authorized Representative